# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| MARCIA KELLEY, IDA STEINBERG, LAVERNE JACKSON, PAUL BANKS and the MEMPHIS-SHELBY COUNTY EDUCATION ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> SHELBY COUNTY BOARD OF EDUCATION and SUPERINTENDENT DORSEY E. HOPSON, II, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 2:14-cv-2632-SHL-cgc |
| DALE THOMPSON, <br><br> Plaintiff, <br><br> v. <br><br> SHELBY COUNTY BOARD OF EDUCATION and SUPERINTENDENT DORSEY E. HOPSON, II, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 2:14-cv-2633-SHL-cgc |

**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This case concerns an employment dispute motivated by competing interpretations of Tennessee's Tenure Act, before this Court on removal by Defendants. (ECF No. 1.) The parties filed cross-motions for summary judgment on August 31, 2015. (ECF No. 33.) By agreement of the parties, Plaintiff Thompson's case was consolidated with this action on November 25, 2015. (Thompson v. Shelby Cnty Bd of Ed., 2:14-cv-2633-SHL-cgc, ECF No. 42.)

The parties do not dispute the material facts – this matter is purely a legal dispute. Plaintiffs argue that Defendants violated Tenn. Code Ann. § 49-5-511 and deprived them of their

constitutional rights to due process when Plaintiffs were laid off from their teaching positions with Shelby County Schools in the summer of 2014. Plaintiffs seek compensatory damages, back pay, reinstatement and declaratory relief. In contrast, Defendants assert that they strictly complied with Tennessee law, the United States Constitution and the Family and Medical Leave Act ("FMLA") when laying off Plaintiffs. The issues here revolve around competing interpretations of both Tennessee's teacher tenure laws and federal law protecting tenured government employees.

On December 2, 2015, the Court granted the parties' request to proceed on a case stated basis. (ECF No. 46.) At the parties' request, on December 21, 2015, the Court heard oral argument on the cross-motions for summary judgment in lieu of a trial. As more fully outlined below, the Court concludes that the process Defendants implemented to effect layoffs in the summer of 2014 violated Tenn. Code Ann. § 49-5-511(b) because the Shelby County Board of Education improperly delegated its power to the Shelby County Schools' administration. However, the Court also holds that Defendants' layoff process did not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Finally, Defendants did not violate the Family and Medical Leave Act ("FMLA") with respect to Plaintiff Thompson's termination.

## FINDINGS OF FACT[1]

The events in this case took place in the aftermath of the merger between Memphis City Schools and Shelby County Schools in 2013, resulting in a new school district called Shelby County Schools ("SCS"), governed by the Shelby County Board of Education ("Board of Education"). After the merger, a number of municipalities located within the district formed

---

[1] The Court's findings of fact are derived from the parties' statements of facts in their briefings. The parties have stipulated that these facts are undisputed.

their own school districts. The new school districts drew away a significant number of students from the newly-formed SCS. As a result of the projected decline in student enrollment after the 2013-2014 school year, SCS had to reduce the number of teachers on its payroll for the 2014-2015 school year. (ECF No. 33-2 at ¶ 3.) Although 1,908 teachers also moved to the new municipal school districts, and 342 teachers resigned or retired at the end of the 2013-2014 school year, the projected enrollment shortfall required further system-wide reductions of teaching positions before the 2014-2015 school year. (See id. at ¶ 6.)

To effectuate these reductions, SCS implemented the "excessing" process that is at issue in this case. First, the Board of Education approved a resolution authorizing an overall reduction in teaching positions within SCS. (ECF No. 40-1 at 17.) After approving the general reduction in force, without any specific numbers or positions to be eliminated, the Board of Education delegated the task of deciding which specific teaching positions to eliminate to the Superintendent and school principals. (Id.) Pursuant to the resolution to reduce the size of the teaching force, the SCS Budget Office received projected system-wide enrollment numbers,[2] calculated the number of teaching positions allowed at each school, and then relayed this information to the principals of each school. (Id. at ¶ 9.) Each school's principal then recommended which teaching positions should be eliminated. (Id. at ¶ 11.) In making these recommendations, the principals were not required to prefer tenured teachers over non-tenured teachers solely by virtue of their tenured status. Instead, a teacher's effectiveness, as measured by state evaluation standards, as well as his or her qualifications were the main determinants in whether a teacher was retained. (ECF No. 29 at ¶ 14; ECF No. 40-1 at ¶14.) The principals'

---

[2] The record is unclear as to from whom the SCS Budget Office received the projected enrollment numbers.

decisions were then submitted to the SCS Human Resources Department for review and approval under the supervision of Superintendent, Dorsey Hopson, II. (ECF No. 33-2 at ¶ 12.)

After the excessing decisions were approved by Human Resources, the school principals informed the affected teachers that their positions would be abolished. (ECF No. 33-2 at ¶14; see ECF No. 29 at ¶ 6.) If the excessed teachers desired to continue working within the SCS system, they had to apply for positions at schools with vacancies. (See ECF No. 33-2 at ¶ 15.) If an excessed teacher did not successfully obtain a vacant position by June 15, then that teacher was notified via letter that he or she would be officially laid off on June 30. (Id. at ¶ 17.) The letter was signed by Superintendent Hopson. The letter also stated that the dismissed teacher would be placed on what is known as the "list for reemployment,"[3] pursuant to Tenn. Code Ann. 49-5-511(b)(3). (Id. at ¶ 17.) While principals were required to interview qualified teachers from the reemployment list for vacancies, they were not required to afford preferential treatment to the teachers on the list, and principals could also consider other applicants alongside those teachers on the reemployment list. (ECF No. 33-2 at ¶ 21; ECF No. 29 at ¶¶ 18–19.)

All individual Plaintiffs were laid off in the summer of 2014 according to the above-described process. (ECF No. 29 at ¶¶ 6–7.) Plaintiff Thompson was on approved FMLA leave when all positions at her school, Northside High School, were abolished, requiring all faculty there to reapply for jobs. Plaintiffs Kelley and Steinberg found employment within SCS for the 2014-2015 school year.[4] (ECF No. 33-2 at ¶¶ 38, 40.) Plaintiff Banks eventually found employment within SCS, but not until after the 2014-2015 school year. (Id. at ¶ 41.) Plaintiff

---

[3] Defendants refer to the list as the "preferential list for reemployment." (See ECF No. 33-2 at ¶ 17.) While prior versions of Tenn. Code Ann. § 49-5-511(b)(3) have referred to the list using the word "preferential," the current version of the statute calls it the "list for reemployment." Tenn. Code Ann. § 49-5-511.
[4] Plaintiff Kelley has since retired. (ECF No. 33-2 at ¶ 39.)

4

Jackson, a cosmetology teacher, has not found employment since being laid off in the summer of 2014. Plaintiff Thompson could not find a new teaching position after being laid off and elected to retire.

## STANDARD OF REVIEW

Because of the lack of any factual disputes, the Court allowed the parties to proceed on a "case stated" basis in lieu of traditional summary judgment. "In a case stated, the parties waive trial and present the case to the court on the undisputed facts in the pre-trial record." Hartford Cas. Ins. Co. v. Ewan, 890 F. Supp. 2d 886, 890 (W.D. Tenn. 2012) (internal quotations omitted). When reviewing the undisputed facts, the Court need only make reasonable inferences therefrom, and then issue findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52(a). Id.

## CONCLUSIONS OF LAW

Plaintiffs argue that the process by which they were laid off violated both federal and state law, and seek declaratory relief as well as statutorily-mandated back pay for themselves and similarly situated teachers. First, Plaintiffs facially challenge the excessing process as a violation of Tennessee's Tenure Act. They assert that, according to the statute, decisions to dismiss tenured teachers from their positions can only be made by a school district's board of education, not the superintendent, school principals, or human resources department. Plaintiffs also assert that Defendants' layoff process did not comport with the most recent prior version of Tenn. Code Ann. § 49-5-511(b), which gave preferential treatment to tenured teachers in the rehiring process. Plaintiffs argue that that version of the statute applied to Defendants' conduct at issue here. Finally, Plaintiffs aver that, because a tenured position is a constitutionally-protected property right, SCS violated the Due Process Clause of the Fourteenth Amendment by failing to provide

5

them with adequate procedural protections when abolishing their teaching positions. Plaintiff Thompson separately alleges that Defendants' layoff process amounted to an interference with her right to return to work after her FMLA leave.

Defendants argue, as a threshold issue, that Plaintiffs Thompson, Kelley, Steinberg, Banks and the Memphis-Shelby County Education Association do not have standing to seek declaratory relief. Defendants also contend that they operated based on a legal delegation of authority from the Board of Education to the Superintendent under Tennessee's Tenure Act to remove and replace tenured teachers. Finally, they argue that they complied with the current version of Tenn. Code Ann. § 49-5-511(b), which they contend is the applicable law, and which does not provide preferential treatment to laid-off tenured teachers. Therefore, according to Defendants, because its layoff process complied with the applicable law, it did not violate the Constitution or the FMLA.

## I. Standing of Plaintiffs Thompson, Kelley, Steinberg, Banks and MSCEA

As an initial matter, the Court must first address whether Plaintiffs Thompson, Kelley, Steinberg, Banks and MSCEA have standing to seek declaratory relief.[5] Defendants argue that because individual Plaintiffs Thompson, Kelley, Steinberg and Banks have all either found employment again or, as to Ms. Kelley and Ms. Thompson, retired, these Plaintiffs cannot allege a continuing injury that would be addressed by a prospective declaratory judgment. Furthermore, Defendants argue that Plaintiff MSCEA cannot allege the prerequisites required to establish organizational standing in federal court.

---

[5] Defendants do not contest Plaintiff Jackson's standing to pursue all of her claims, and, as she has been unable to find employment as a teacher since her dismissal, she has standing to seek a declaratory judgment. (See analysis infra. pp. 8–9.)

However, Defendants misread the law governing Article III standing, which is understandable given its complexity and inscrutability, but they are mistaken nonetheless. All Plaintiffs have Article III standing. Plaintiffs Kelley, Steinberg and Banks had standing to seek a declaratory judgment at the time that the lawsuit was filed. As is more fully explained below, their standing to sue vested at that time, and could not be abrogated due to subsequent events. Moreover, Plaintiff MSCEA has met all of the prerequisites to allege organizational standing under Article III. Finally, the Court need not analyze whether Plaintiff Thompson has standing to sue for declaratory relief because there are other Plaintiffs who have such standing.[6]

Article III of the United States Constitution only allows this Court to hear "Cases" or "Controversies" arising under a number of enumerated circumstances that are "'appropriately resolved through the judicial process.'" U.S. Const. art. III, § 2, cl. 1; Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). One of the essential components of the case or controversy requirement is the doctrine of standing, or whether a person or entity is the appropriate party to bring suit in federal court. Id. The Supreme Court has laid out three elements a plaintiff must satisfy in order to establish the "irreducible constitutional minimum of standing." Id. Those elements are: (1) injury in fact, (2) causation and (3) redressability. Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., 528 U.S. 167, 180 (2000). The injury-in-fact element of standing requires an injury that is "concrete and particularized" as well as "actual or imminent" as opposed to "conjectural or hypothetical." Lujan, 504 U.S. at 560.

To have standing to seek declaratory relief, a plaintiff must show that he or she is "subject to 'an actual present harm or a significant possibility of future harm.'" Grendell v. Ohio

---

[6] Additionally, Plaintiff Thompson has standing to pursue her FMLA claim against Defendants.

Supreme Ct., 252 F.3d 828, 833 (6th Cir. 2001) (quoting Nat'l Rifle Ass'n v. Magaw, 132 F.3d 272, 279 (6th Cir. 1997).  A previous injury may confer standing upon a plaintiff to seek damages.  City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983).   However, the prior injury itself does not confer standing upon a plaintiff to seek declaratory relief.  Grendell, 252 F.3d at 832.  Instead, a prior injury only constitutes "'evidence bearing on whether there is a real and immediate threat of repeated injury.'"  Id. at 833 (quoting Lyons, 461 U.S. at 102.)

The proper point to assess a plaintiff's standing to seek a declaratory judgment is at the beginning of the lawsuit, as standing is assessed at the time the complaint is filed.  See Cleveland Branch, N.A.A.C.P. v. City of Parma, 263 F.3d 513, 524 (6th Cir. 2001); Renteria-Villegas v. Metro. Gov't of Nashville & Davidson Cnty., 796 F. Supp. 2d 900, 905 (M.D. Tenn. 2011).  Once established, it need not "be maintained throughout all stages of the litigation."  City of Parma, 263 F.3d at 524.  Therefore, a plaintiff subject to a continuing or threatened harm at the outset of the litigation has standing to seek a declaratory judgment, even if the plaintiff is no longer subject to that harm.

### A.   Individuals' Standing to Seek Declaratory Relief

Plaintiff Kelley is now retired, and Plaintiffs Steinberg and Banks found employment within SCS after being laid off in the summer of 2014.  However, because those events occurred after they became parties to the suit, they are irrelevant to the Court's standing inquiry.  The relevant question is whether these Plaintiffs had standing to seek declaratory relief at the time they filed their cause of action.  See City of Parma, 263 F.3d at 524.  The answer is yes.

Plaintiff Kelley filed her complaint in Tennessee state court on August 4, 2014.  It was removed to this Court on August 14, 2014.  At that time, she was still unemployed, and thus subject to a continuing injury caused by Defendants' excessing process.  When Plaintiffs Banks

8

and Steinberg joined the suit, they too were still out of work. Therefore, at the time of filing, each of these Plaintiffs had a continuing injury-in-fact allegedly caused by Defendants' wrongful conduct that could be redressed by a declaratory judgment entitling them to reinstatement and back pay. Thus, at the time of filing, Plaintiffs Kelley, Steinberg and Banks had standing to pursue this action, and they still do.

B. **Organizational Standing of MSCEA to Seek Declaratory Relief**

An organization has standing to sue on behalf of its members in federal court "when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977). To show that an organization's members would have standing to sue in their own right, it is not enough for an organization to argue that the size of its membership makes it a statistical likelihood that a member will suffer an injury-in-fact. Summers v. Earth Island Inst., 555 U.S. 488, 497–500 (2009). Instead, the organization must point to a specific member's alleged injury or threatened injury via affidavit or other proof. Id. at 498; Sierra Club v. Morton, 405 U.S. 727, 735–36 (1972).

Here, MSCEA has satisfied the prerequisites to establish organizational standing. First, it has members who would have standing to sue in their own right as all of the individual Plaintiffs are members of MSCEA, and the Court has determined that they have standing.[7] Second, MSCEA seeks to protect its members who are tenured teachers from dismissal in violation of

---

[7] Contrary to Defendants' assertions, there is nothing in the law of standing that requires that, to meet this requirement, an organization point to members who are not parties to the case to establish the organization's standing.

Tennessee law, an interest germane to MSCEA's organizational purpose as a teachers' union. Finally, MSCEA seeks a declaratory judgment that Defendants' excessing process violates the Tenure Act. Its claim does not require adjudication of individual facts, nor does it seek damages, which would require an individualized determination. Its cause of action, therefore, does not require the participation of individual MSCEA members. Therefore, MSCEA has met the requirements for organizational standing under Hunt, and it may proceed with its cause of action.

## II. Violation of Tenn. Code Ann. § 49-5-511(b)

Plaintiffs argue that the undisputed facts show that Defendants' excessing process violated Tenn. Code Ann. § 49-5-511(b), attacking Defendants' conduct from two angles. First, Plaintiffs argue that the manner by which the excessing process was conducted amounts to an illegal delegation of the power to hire and fire tenured teachers by the Board of Education to individual school principals. They contend that the Tennessee Legislature has expressly and solely granted the authority to employ tenured teachers to boards of education, and that power cannot be delegated. Second, Plaintiffs assert that the most recent prior version of Tenn. Code Ann. § 49-5-511(b), which provided for preferential treatment of laid-off tenured teachers, was the governing law at the time of these layoffs, and, because Plaintiffs were not afforded preferential treatment, Defendants violated the law.

In response, Defendants contend that the Board of Education had the authority to delegate some measure of its hiring decisions to school principals. They assert that, where there is no express prohibition on delegation, a municipal entity may delegate ministerial, administrative or executive functions, and that these decisions were in fact purely ministerial, given the procedures put in place by the Board. With regard to Plaintiffs' second claim, Defendants assert that the current version of § 49-5-511(b) applies to Defendants' conduct, and that Plaintiffs were

afforded all the requisite rights afforded to laid-off teachers under that law. The Court need not decide which version of the statute applies to Defendants' layoff process, because, regardless of which version applies, the layoff process amounted to an impermissible delegation of the board's authority governing the removal of tenured teachers.

Tennessee law makes local school boards responsible for conferring tenure and dismissing tenured teachers. Tenn. Code Ann. §§ 49-2-203(a)(1), 49-5-511. Although the Tennessee Legislature transferred many powers from school boards to local superintendents in 1992, the power over tenured teachers was not one that was transferred. See Tenn. Code Ann. § 49-2-301(b)(EE). As the Tennessee Code specifies, superintendents are granted authority over hiring, firing and transferring all personnel, except tenured teachers. Id. Based on the Legislature's specific exception of tenured teachers from this grant of authority to superintendents, Plaintiffs argue that Defendants' excessing process violates the law.[8] The language of both the current version and the most recent prior version of Tenn. Code Ann. § 49-5-511(b)(1) states that, "[w]hen it becomes necessary to reduce the number of teaching positions in the system . . . the board shall be empowered to dismiss such teachers or nonlicensed employees." (emphasis added).[9] The next subsection requires that the board of education

---

[8] Plaintiffs also argue that this Court should construe Defendants' conduct in light of Dillon's Rule, a canon of construction that requires a strict and narrow interpretation of a municipal entity's powers. See Arnwine v. Union Cnty. Bd. of Ed., 120 S.W.3d 804, 807–08 (Tenn. 2003). However, the Court does not believe Dillon's Rule is applicable here. Dillon's Rule constrains municipal entities from acting beyond their express or implied grants of authority. See id. Whether a municipal entity may delegate the authority expressly conferred upon it by the legislature requires similar analysis, but is still a different matter. See 2A Eugene McQuillin, McQuillin's Law of Municipal Corporations § 10:42 (3d ed. 2015).

[9] Tenn. Code Ann. § 49-5-511(b)(1) does not apply only to tenured teachers, but rather must apply to all teachers. Other sections of the statute that apply solely to tenured teachers specifically use the phrase "tenured teacher." For example, in the prior version of § 49-5-511(b)(3), placement on the reemployment list was limited to tenured teachers only. Additionally, the next section, Tenn. Code Ann. § 49-5-512, specifically states that a tenured

11

provide notice to the teachers explaining why their dismissal is necessary. Tenn. Code Ann. § 49-5-511(b)(2).

It is undisputed that, beyond authorizing the overall reduction in force in 2014, the Shelby County Board of Education had no further input in the layoff process. Once the Board authorized the layoff, the SCS budget office allotted the number of positions at each school, and the principals recommended which teaching positions to eliminate, even if those positions were held by tenured teachers. SCS's Human Resources Department, under the supervision of the Superintendent, approved the recommendations, and the Superintendent sent notices of dismissal to all teachers, tenured or not. The Board neither helped determine which teachers were to be dismissed, nor provided notice to the laid-off teachers. In fact, the Board never took another action related to this matter after the initial approval of a general layoff. The question before the Court is whether Tennessee law permits the Board to delegate those responsibilities to the Superintendent and school principals. The Court holds that it does not.

While municipal entities may delegate ministerial, administrative, or executive duties, they may not delegate their discretionary, legislative authority. City of Rockwood v. Cincinnati, N.O. & T.P. Ry. Co., 22 S.W.2d 237, 240 (Tenn. 1929); Green Hills Neighborhood Ass'n v. Metro. Gov't of Nashville, No. M2014–01590–COA–R3–CV, 2015 WL 2393977, at *4 (Tenn. Ct. App., Jan. 22, 2015); see also 2A Eugene McQuillin, McQuillin's Law of Municpal Corporations §§ 10:43, 10:44 (3d ed. 2015). The reasoning behind this distinction is that local elected bodies are "charged with a public trust and the faithful performance of their duties; and the public is entitled to judgment and discretion" exercised by their elected officials. Lotspeich

---

teacher notified of charges pursuant to § 49-5-511 is entitled to a hearing on those charges. Because the Legislature did not use the word "tenured" to describe teachers in § 49-5-511(b)(1), it must have meant that section to refer to reduction-in-force procedures for all teachers, regardless of tenure status.

v. Mayor & Aldermen of Morristown, 207 S.W. 719, 722 (Tenn. 1918). Thus, municipal bodies charged with making public policy have a nondelegable duty to the public to actually make such policy. See id.

Decisions to remove tenured teachers require exactly the kind of policy discretion and judgment that is not delegable. Absent tenure, employment decisions might be considered to be administrative, not legislative, for they would not be broadly applicable policy decisions, but rather decisions made for the purpose of carrying out an entity's policy mission. However, employment decisions that implicate tenure are of a special breed. Tenure is the public policy of the State of Tennessee. See Thompson v. Memphis City Sch. Bd. of Educ., 395 S.W.3d 616, 622–23 (Tenn. 2012) (noting that the Tennessee Legislature established a system of tenure pursuant to its "plenary and exclusive authority to establish the makeup and structure of Tennessee's system of free public schools"); Ryan v. Anderson, 481 S.W.2d 371, 374 (Tenn. 1972) (writing that in establishing tenure, "[t]he General Assembly recognized that the efficient administration of the local educational systems of [Tennessee] requires stability of programs and trained personnel.") The Legislature has created a system of tenure, the purpose of which, among other things, is to provide teachers stability in employment, to enshrine merit as the basis for that stability and to protect teachers from being fired due to malice or political differences. State v. Yoakum, 297 S.W.2d 635, 638 (Tenn. 1956) (quoting McSherry v. City of St. Paul, Minn., 277 N.W. 541, 544 (Minn. 1938)). Thus, any decision to remove a tenured teacher necessarily implicates these public policy goals. To effectuate the public policy goals of tenure, the Tennessee Legislature expressly committed the power over decisions to confer tenure and to remove tenured teachers to local boards of education. Based on the statutory language, the Legislature did not intend these decisions to be delegated to superintendents or school principals,

presumably because the school boards have a duty to the public, students and teachers to exercise their judgment and discretion to further the purposes of tenure. See Lotspeich, 207 S.W. at 722.

The conclusion that a board of education's duties related to tenured teachers cannot be delegated is supported by Tennessee case law. Until March 2008, Tenn. Code Ann. § 49-5-511(b)(3) required that a school district's board of education evaluate a laid-off tenured teacher's qualifications for reemployment within the district.[10] See Tenn. Code Ann. 49-5-511(b)(3) (2008) (prior to 2008 amendment). In construing the pre-March 2008 statute, two Tennessee cases held that school boards could not delegate this duty. In 1987, construing the pre-March, 2008, version of the statute, the Tennessee Supreme Court affirmed a lower court holding that a board of education could not delegate determinations of a tenured teacher's fitness for reemployment to a superintendent. Randall v. Hankins, 733 S.W.2d 871, 875 (Tenn. 1987). The Tennessee Court of Appeals reached a similar decision in 2007. See Lee v. Franklin Special Sch. Dist. Bd. of Ed., 237 S.W.3d 322, 335–36 (Tenn. Ct. App. 2007) (holding that school principals could not make judgments as to qualifications of tenured applicants placed upon the § 49-5-511(b)(3) reemployment list, only the school board could, and thus the board waived the right to later contest plaintiff's qualifications). The crux of both decisions was the fact that the version of § 49-5-511(b)(3) in effect until March, 2008, explicitly gave boards of education the

---

[10] The statute has since been changed to unambiguously give superintendents the power to make such evaluations, which supports the proposition that if the Legislature wanted to expand the power of superintendents with regard to tenured teachers, it would do so expressly. Compare Tenn. Code Ann. § 49-5-511(b)(3) (2008) (prior to 2008 amendment) ("Nothing in this subsection shall be construed to deprive the board of the power to determine the fitness of such teacher for reemployment . . . ." (emphasis added)) with Tenn. Code Ann. § 49-5-511(b)(3) ("Nothing in this subsection (b) shall be construed to deprive the director of schools of the power to fill such vacancy on the basis of the director of schools' evaluation . . . ." (emphasis added)); see also Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004) ("When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application.").

power to determine a tenured teacher's fitness for reemployment. Likewise, the Board may not delegate any other decision to dismiss tenured teachers where the Legislature specifically allocated the power to act to the Board of Education.

To reach any other conclusion would also render Tenn. Code Ann. § 49-2-301(b)(EE) superfluous, which is an unacceptable result. When Tennessee courts construe statutes, they "presume that every word in a statute has meaning and purpose; each word should be given full effect if the obvious intention of the General Assembly is not violated by so doing." Lawrence Cnty. Educ. Ass'n v. Lawrence Cnty. Bd. of Educ., 244 S.W.3d 302, 309 (Tenn. 2007). Section 49-2-301(b)(EE) specifically excepts tenured teachers from the superintendent's authority related to employment decisions. The section states that superintendents have the power to "employ, transfer, suspend, non-renew and dismiss all personnel, licensed or otherwise, except as provided in § 49-2-201(a)(1) and in chapter 5, part five of this title." Tenn. Code Ann. § 49-2-203(a)(1). Those sections of the Tennessee Code address conferring tenure and dismissing teachers, thus specifically excepting those responsibilities from a superintendent's authority. Allowing a board of education to then delegate the excepted authority to superintendents would render the words of Tenn. Code Ann. § 49-2-301(b)(EE) both meaningless and purposeless. The Court will not surreptitiously invalidate provisions of Tennessee law.

The Court is sensitive to the argument that Defendants operate a large, urban school district and delegation is the most efficient way for SCS to make employment decisions. However, the law is the law, and the Court will not countenance a process created for the sake of expediency that flies in the face of a clear statutory mandate. Moreover, this decision should not be read to require that the Board of Education itself review the SCS payroll and make individualized decisions for each teacher. Instead, based on the statutory language at issue here,

15

this Court holds that the Board of Education must ultimately be responsible for the decisions in the layoff process beyond simply approving a general reduction in force. The Board of Education must participate in the decisions to dismiss any tenured teacher pursuant to a reduction in force, and it is the Board that must provide the requisite notice to these teachers. Tennessee law mandates this approach. The Court is confident that Defendants will be able to create an employment regime that both complies with Tennessee law and efficiently manages its organizational needs.

### III. § 1983 Claim and the 14th Amendment

While Defendants violated state law in the manner in which they terminated Plaintiffs' employment, Defendants' conduct does not amount to a constitutional violation. It is true that tenured public school teachers have a constitutionally protected property interest in continued employment that cannot be taken away without due process of law. Thompson v. Memphis City Sch. Bd. of Educ., 395 S.W.3d 616, 627 (Tenn. 2012); see Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). However, while the Constitution protects Plaintiffs' property rights, the property right itself – the right to continued employment – is a creation of the State of Tennessee. See Roth, 408 U.S. at 577. Where a statute creating a property right in continued employment in a position specifically states that the position may be eliminated pursuant to a legitimate reduction in force, the Due Process Clause does not restrict said reduction in force. Upshaw v. Metro. Nashville Airport Auth., 207 F. App'x 516, 519 (6th Cir. 2006); Forrest v. Trousdale Cnty. Bd. of Ed., 954 F. Supp. 2d 720, 727–28 (E.D. Tenn. 2013); see Pucci v. Nineteenth Dist. Ct., 596 F. App'x 460, 474 (6th Cir. 2015) (describing the holding in Upshaw); see also Kraven v. Village of Oakwood, Ohio, No. 1:12VC01795, 2013 WL 38993340, at *4 (N.D. Ohio, July 26, 2013) (holding that the Due Process Clause did not apply to the case because "Ohio law establishes that

a public employee does not have a property interest in a position that is eliminated for budgetary reasons."). A "legitimate reduction in force" is one conducted pursuant to an actual reorganization, as opposed to one that is a mere sham calculated to circumvent due process protections. See Upshaw, 207 F. App'x at 519. The Court must therefore look to the Tenure Act to determine the extent of the property right created by the State. See Upshaw, 207 F. App'x at 519, and determine whether the reduction in force was conducted for a proper purpose.

First, the Tennessee tenure statute explicitly contemplates that a tenured teacher's employment may be eliminated via a necessary reduction in force, with only prior notice as a prerequisite. Tenn. Code Ann. § 49-5-511(b)(1)–(2). Thus, the statute "that created [Plaintiffs'] property interest explicitly contemplated the possibility that positions would be eliminated without necessitating the due process protections that discharge for cause requires." Upshaw, 207 F. App'x at 519–20. Therefore, while Plaintiffs had a constitutionally protected property interest in continued employment as long as their jobs existed, they did not have a constitutional right to the existence of their jobs. Additionally, there is no evidence in the record that Defendants initiated the reduction in force to actually remove Plaintiffs for-cause without providing them with the procedural due process protections that tenure ensures.

It is of no matter that Defendants violated state law in how they conducted the reduction in force, as such a violation does not amount to a constitutional infraction. State-created procedural rights do not, in themselves, create rights protected by the Due Process Clause of the Fourteenth Amendment, even when the procedure governs situations that explicitly implicate a protected liberty or property interest, a situation that is not present here. See Olim v. Wakinekona, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of

17

entitlement."); Swartz v. Scruton, 964 F.2d 607, 610 (7th Cir. 1992) ("Procedural interests under state law are not themselves property rights that will be enforced in the name of the Constitution."); Bills v. Henderson, 631 F.2d 1287, 1299 (6th Cir. 1980) ("While such adherence is desirable, every deviation from state procedures [governing prisoner transfer hearings] cannot be viewed as a constitutional violation."). Here, Plaintiffs do not have a protected property interest in a position abolished during a legitimate reduction in force, and they do not have a due process right in the procedure that governs the reduction in force. Hence, Defendants' conduct did not run afoul of the Constitution.

## IV. Thompson's FMLA Claim

Plaintiff Thompson alleges that Defendants violated the FMLA when they prevented her from returning to her job or an equivalent position when her leave expired. She asserts that, in light of her tenure, she was entitled to return to an equivalent position anywhere in the school district, even though her position at Northside High School was eliminated. Defendants argue that their conduct did not violate the FMLA because Plaintiff Thompson was laid off for reasons completely unrelated to her FMLA leave, and Plaintiff Thompson's status as a tenured teacher on FMLA leave did not entitle her to any more rights than any other laid-off teacher. The Court agrees with Defendants.

An employer violates the FMLA if it interferes with an employee's right to return to work at the end of FMLA leave. Arban v. West Publ'g Corp., 345 F.3d 390, 401 (6th Cir. 2003). However, no violation occurs if an employee is dismissed while on FMLA leave and the dismissal would have occurred regardless of whether the employee exercised his or her rights under the FMLA. Id. Here, there is absolutely no evidence that Plaintiff was terminated as a result of her FMLA leave. Instead, all of the positions at her school were eliminated and she was

unable to obtain reemployment. Plaintiff Thompson has alleged no facts which would suggest that Defendants abolished all of the teaching positions at Northside High School in order to interfere with her right to return to work following her FMLA leave. Therefore, Ms. Thompson's termination, however flawed it may have been under the state tenure laws, did not violate the FMLA.

**V.     Remedy for Violation of Tenn. Code Ann. § 49-5-511(b)**

Plaintiffs assert that their termination in violation of Tenn. Code Ann. § 49-5-511(b) entitles them to reinstatement and back pay pursuant to Tenn. Code Ann. § 49-5-511(a)(3). Defendants contend that § 49-5-511(a)(3) only applies to tenured teachers who have been wrongly terminated for cause. The Court finds that the remedy afforded to tenured teachers wrongly dismissed for cause also applies to tenured teachers dismissed in violation of Tenn. Code Ann. § 49-5-511(b). See Lee v. Franklin Special Sch. Dist. Bd. of Ed., 237 S.W.3d 322, 337 (Tenn. Ct. App. 2007) (holding that a teacher wrongfully denied reemployment in violation of Tenn. Code Ann. § 49-5-511(b)(3) is entitled to reinstatement and back pay); Randall v. Hankins, 675 S.W.2d 712,714 (Tenn. Ct. App. 1984) (same). Therefore, Plaintiffs are entitled to back pay and Plaintiff Jackson is also entitled to reinstatement to her former position. The Court will hold a status conference on **August 26, 2016, at 10:30 a.m.**, to establish a schedule from consideration of damages. The parties shall submit a joint proposed schedule by **August 23, 2016**, for the Court's consideration.

## **CONCLUSION**

For the foregoing reasons, the Court holds that Defendants' layoff and excessing process failed to comply with the strictures of Tenn. Code Ann. 49-5-511(b). However, Defendants'

19

conduct did not violate either the FMLA or the United States Constitution. The Court will hold further proceedings on damages, as described above.

**IT IS SO ORDERED,** this 3rd day of August, 2016.

s/ Sheryl H. Lipman  
SHERYL H. LIPMAN  
UNITED STATES DISTRICT JUDGE